UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Camille Williams and<br>Carrie Athanasselis,<br>        Plaintiffs,<br>v.<br>City of Minneapolis, William Gregory,<br>Richard Brown, Jr., Kurtis Schoover,<br>Kenneth Tidgwell, and Michael<br>Nordin,<br>        Defendants. | Court File No. 15-cv-4501 RHK/FLN<br><br>**FIRST AMENDED COMPLAINT AND JURY DEMAND** |

## THE PARTIES

1. Plaintiffs are adult females who currently reside and have resided in Minneapolis, Minnesota at all times relevant to this action. Plaintiff Williams is Plaintiff Athanasselis's daughter.

2. The individual defendants are adult males who at all times relevant to the allegations set forth in this Complaint were acting under the color of state law in their capacities as law enforcement officers employed by the City of Minneapolis, Minnesota. Plaintiffs are suing the individual defendants in their individual capacities.

3. Defendant City of Minneapolis is a political subdivision of the State of Minnesota. Minneapolis employed the individual defendants as police officers at all times relevant to this action. Minneapolis is sued directly and

also, on all relevant claims, on the theories of respondeat superior or vicarious liability and pursuant to Minn. Stat. § 466.02 for the unlawful conduct of the individual defendants. Minneapolis is the political subdivision charged with training and supervising law enforcement officers. Minneapolis has established and implemented, or delegated the responsibility for establishing and implementing policies, practices, procedures, and customs used by law enforcement officers employed by Minneapolis regarding seizures and the use of force. Minneapolis is therefore also being sued directly pursuant to *Monell v. Dept. of Soc. Svcs.*, 436 U.S. 658 (1978).

## JURISDICTION AND VENUE

4. This is an action for monetary and declaratory relief under 42 U.S.C. §§ 1983 and 1988 and federal and state common law. This Court has jurisdiction over this matter under 28 U.S.C. §§ 1331, and 1367. Venue is proper in this district under 28 U.S.C. § 1391, as the acts and omissions giving rise to this action occurred in this district, and, on information and belief, all Defendants reside in this district.

## GENERAL ALLEGATIONS

5. During the evening on November 18, 2015, Plaintiff Williams was peacefully protesting in the area around the 4th Precinct police station in Minneapolis.

6. Plaintiff Williams, and hundreds of other concerned people, were peacefully protesting over the Minneapolis police officers who shot and killed an unarmed man, Jamar Clark, several days earlier.

7. The protest was connected to a larger national movement protesting police officers who needlessly kill or injure people, Black people in particular.

8. Plaintiff Athanasselis knew that her daughter, Plaintiff Williams, was protesting in the area around the 4th Precinct.

9. Plaintiff Athanasselis became concerned for her daughter's safety, as she heard that Minneapolis police officers were spraying protestors with mace and firing marking rounds into the crowd of protestors.

10. Indeed, here is an image of Minneapolis police officers firing marking rounds into the crowd of protestors in front of the 4th Precinct station on November 18, 2015:



11. At some point after Plaintiff Athanasselis heard about police officers using force against the peaceful protestors, she called Plaintiff Williams's mobile phone. When Plaintiff Williams did not answer her phone, Plaintiff Athanasselis felt compelled to go to the 4th Precinct station to try to locate her daughter.

12. Plaintiff Athanasselis located her daughter in front of the 4th Precinct station.

13. By the time Plaintiffs connected with each other, the police officers in front of the 4th Precinct station were agitated and hostile to the protestors.

14. The Plaintiffs and about 10 other protestors moved toward the side entrance of the 4th Precinct station, while the majority of the protestors remained in front.

15. About 10 police officers, including the individual defendants, wearing full riot gear convened directly in front of Plaintiffs and the 10 or so other protestors near the side entrance to the 4th Precinct station.

16. One of the officers wore a riot gear helmet with the name "Johnson" printed on the back.

17. These officers were agitated and hostile to Plaintiffs and the protestors.

18. Plaintiff Williams feared that these police officers would use force against the protestors, and decided to video record them with her mobile phone.

19. On several occasions, Plaintiff Williams informed the police officers that she was recording them with her mobile phone, and held her phone up so they could see it.

20. Plaintiffs and the 10 or so other protestors peacefully protested in the area outside of the side entrance to the 4th Precinct station for 10 to 15 minutes.

21. After 10 to 15 minutes, the police officers requested Plaintiffs and the protestors to move back, ostensibly so a white van—driven by another officer—could drive down an alley.

22. Plaintiffs and the protestors complied with the police officers' request.

23. The van stopped in the middle of the alley, blocking off Plaintiffs and the 10 or so protestors from the view of the majority of other protestors and media outlets covering the protest.

24. Shortly after the van stopped in the middle of the alley, some of the police officers started pushing the protestors, even though the protestors had complied with the police officers' request to back up.

25. Defendant Schoonover then yelled "Push 'em this way!"

26. Defendant Gregory then yelled, "Push 'em!"

27. The officers then started attacking the protestors.

28. One or more officers hit Plaintiff Williams with a night stick several times in her face and body. Plaintiff Williams believes Defendant Tidgwell was the officer who hit her.

29. One officer hit Plaintiff Anthanasselis in the face under her left eye with a night stick.

30. This is what her face looked like shortly after the attack:



31. During the attack, one of the officers grabbed Plaintiff Williams's phone, threw it on the ground, and hit it with a nightstick.

32. This is what her phone looked like shortly after the attack:



33. The white van never left the vicinity of the 4th precinct.

34. On information and belief, the reason why the officer drove the van into the middle of the alley was so police officers could attack Plaintiffs and other protestors outside the view of the majority of the protestors and media outlets covering the protest.

35. Plaintiffs did not do anything during this incident that would cause a person to use force against them.

36. Plaintiffs did not interfere with the officers at any time relevant to this action.

37. Plaintiffs were cooperative with the officers at all times relevant to this action.

38. Defendants' conduct caused Plaintiffs to suffer injuries and damages.

39. Plaintiffs sought treatment for their physical injuries at the emergency room several hours after the attack.

40. Plaintiff Williams had to pay money to have her phone repaired.

**COUNT I – AGAINST ALL DEFENDANTS**
**DEPRIVATION OF CIVIL RIGHTS IN VIOLATION OF 42 U.S.C. § 1983 AND THE FOURTH AND FOURTEENTH AMENDMENTS – EXCESSIVE FORCE**

41. Plaintiffs restate the allegations contained in the previous paragraphs as if fully incorporated herein.

42. At least two of the individual defendants used force against Plaintiffs while seizing them.

43. The amount of force the individual defendants used while seizing Plaintiffs was unreasonable under the circumstances.

44. The individual defendants were acting under color of state law when they used unreasonable force while seizing Plaintiffs.

45. The individual defendants' actions and omissions caused Plaintiffs to suffer a violation of their Fourth Amendment rights.

46. At the time of the events giving rise to this action, it was clearly established that it is unconstitutional to use unreasonable force, as these individual defendants used against Plaintiffs, to effectuate a seizure.

47. Defendants Schoonover and Gregory caused Plaintiffs to suffer violations of their Fourth Amendment rights.

48. The other individual defendants witnessed the use excessive force against Plaintiffs.

49. The other individual defendants had an affirmative duty to intervene on behalf of Plaintiffs, whose Fourth Amendment rights were being violated in their presence by another law enforcement officer.[1]

50. The other individual defendants failed to intervene on Plaintiffs' behalf.

51. Plaintiffs suffered harm as a result of Defendants' denial of their constitutional rights.

**COUNT II – AGAINST MINNEAPOLIS AND THE INDIVIDUAL OFFICERS WHO USED FORCE AGAINST PLAINTIFFS AND GRABBED PLAINTIFF WILLIAMS' PHONE**
**DEPRIVATION OF CIVIL RIGHTS IN VIOLATION OF 42 U.S.C. § 1983 AND THE FIRST AND FOURTEENTH AMENDMENTS**

52. Plaintiffs restate the allegations contained in the previous paragraphs as if fully incorporated herein.

53. Protesting police who needlessly kill people is core political speech protected by the First Amendment to the United States Constitution.

54. Observing and recording public police activities, without interfering with those duties, is a legitimate means of gathering information for public

---

[1] *Webb v. Hiykel*, 713 F.2d 405, 408 (8th Cir.1983); *Putman v. Gerloff*, 639 F.2d 415, 423 (8th Cir.1981).

dissemination and is therefore expressive conduct protected by the First Amendment to the United States Constitution.

55. Defendants' use of force against Plaintiffs constituted unlawful retaliation by public officials for Plaintiffs engaging in activity protected by the First Amendment to the U.S. Constitution.

56. Defendant City of Minneapolis is responsible for the violation of Plaintiffs' constitutional rights because the individual Defendants' actions resulted from the City's custom, pattern, practice, or policy of allowing officers to arrest individuals for their expressive conduct in protesting police and videotaping or otherwise recording police undertaking their official duties.

57. Plaintiffs suffered harm as a result of Defendants' denial of their constitutional rights.

### COUNT III – AGAINST MINNEAPOLIS AND THE INDIVIDUAL OFFICERS WHO HARMFULLY TOUCHED PLAINTIFFS
### BATTERY

58. Plaintiffs restate the preceding paragraphs as though fully stated herein.

59. Defendants harmfully touched Plaintiffs.

60. Defendants' actions were objectively unreasonable and actually and proximately caused Plaintiffs to suffer harm.

### JURY DEMAND

61. Plaintiffs demand a jury trial.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

1. Enter judgment in Plaintiffs' favor on their claims against Defendants, the exact amount to be proven at trial;

2. Declare that Defendants' conduct, as set forth above, violated 42 U.S.C. § 1983;

3. Award Plaintiffs damages to compensate them for the injuries they suffered as a result of Defendants' unlawful conduct;

4. Award Plaintiffs punitive damages with respect to their claims under federal law, the exact amount to be proven at trial;

5. Grant Plaintiffs leave to amend the Complaint to include a claim for punitive damages, the exact amount to be proven at trial;

6. Award Plaintiffs reasonable expenses incurred in this litigation, including attorney and expert fees, pursuant to 42 U.S.C. § 1988;

7. Grant Plaintiffs all statutory relief to which they are entitled;

8. Grant Plaintiffs leave to amend this Complaint to supplement any factual deficiencies or otherwise address any pleading deficiencies herein; and

9. Grant any other relief the Court deems just and equitable.

Dated: August 22, 2016          *s/Joshua R. Williams*
Tim M. Phillips (#390907)
tphillips@jrwilliamslaw.com
Joshua R. Williams (#389118)
jwilliams@jrwilliamslaw.com
3249 Hennepin Avenue S, Suite 216
Minneapolis, Minnesota 55408
(612) 486-5540
(612) 605-1944 Facsimile

**ATTORNEYS FOR PLAINTIFFS**